UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

EXGARDO ERAZO,                            )
                                          )
                 *Petitioner*,            )
v.                                        )        Nos.:  3:08-CR-70-1-TAV-HBG
                                          )               3:12-CV-230-TAV
UNITED STATES OF AMERICA,                 )
                                          )
                 *Respondent*.            )

## MEMORANDUM OPINION

This is a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §

2255 filed by petitioner Exgardo Erazo ("petitioner").  The government has filed its

response to the motion, and petitioner has filed two replies, as well as an amendment.

Plaintiff has also filed a motion for status and a motion to expedite proceedings.

Petitioner has failed to demonstrate he is entitled to relief under § 2255.  For the reasons

set forth below, petitioner's motion to vacate, set aside or correct sentence [Doc. 168[1]]

will be **DENIED**, and petitioner's motion for status [Doc. 202] and motion to expedite

proceedings [Doc. 210] will be **DENIED as moot**.

## I.      Standard of Review

This Court must vacate and set aside petitioner's conviction upon finding "there

has been such a denial or infringement of the constitutional rights of the prisoner as to

render the judgment vulnerable to collateral attack."  28 U.S.C. § 2255.  To prevail under

---

[1] All citations to the record refer to the docket sheet in Criminal Action No. 3:08-CR-70-TAV-HBG.

§ 2255, petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the Court is to determine whether an evidentiary hearing is required after a review of the answer and the records of the case. If the motion to vacate, the answer, and the records of the case conclusively show petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

## II. Facts

On May 20, 2008, an initial indictment was filed against petitioner, and petitioner was taken into custody on June 4, 2008 [Docs. 3 and 4]. On November 3, 2009, a superseding indictment was filed charging petitioner with one count of conspiring to distribute and possess with intent to distribute at least fifty (50) grams of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A); three counts of distributing cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); three counts of distributing at least fifty grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); and one count of distributing at least five grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) [Doc. 112].

Petitioner, through counsel, filed several motions to continue the trial [Docs. 16, 30, 34, 39, 51, 103]. Petitioner also filed a number of substantive pre-trial motions *pro se*, despite his continuous representation by various[2] court appointed attorneys [Docs. 56, 57, 58, 59, 60, 61, 65, 66, 67, 70, 90, 91, 92, 93, 106, 107, 108, 128, 129, 130, 131].

The Court held a jury trial on January 12, 2010 [Doc. 122]. The testimony at petitioner's jury trial was that, in April 2008, Officer Shaffer of the Knoxville Police Department ("KPD") received information from a confidential informant and another individual indicating that petitioner was distributing cocaine [Doc. 154 p. 92–95]. Accordingly, KPD officers worked with the confidential informant and through undercover officers to make controlled buys of various controlled substances from petitioner, some of which involved Heather Shay [Doc. 154 p. 92–95, 103–108, 111–14, 120–23, 124, 130, 132–35, 136–139; Doc. 155 p. 13–15]. On one of the controlled buys Officer Shay arranged with petitioner, Officer Shay was supposed to meet petitioner at his apartment, but after Heather Shay told petitioner that Officer Shaffer could not come to the apartment due to questions from the landlord, petitioner directed Heather Shay to deliver the drugs to Officer Shaffer at a separate location, Heather Shay complied, and petitioner received all profits of that sale [Doc. 154 p. 129, 132–135; Doc. 155 p. 54–56].

---

[2] The Court appointed a total of four attorneys to represent petitioner at different times in his underlying criminal proceeding.

Officer Shaffer testified that the lowest amount of powder cocaine petitioner would sell during the controlled buys was half an ounce, that the lowest amount that street-level dealers will sell is usually half a gram or a tenth of a gram, and that the fact that petitioner would not sell less than half an ounce "obviously showed the amount the defendant was involved in" and indicated that petitioner was distributing on a larger scale than Officer Shaffer had anticipated [Doc. 154 p. 103–104, 115]. Officer Shaffer also testified that when he arranged a controlled buy directly with Heather Shay, he could only buy a small amount of crack at a price that was higher than the price at which he had bought crack from petitioner, and that this indicated to him that petitioner was the main distributor in control of the operation [*Id.* at 135; Doc. 155 p. 13–14].

Officer Shaffer further testified that petitioner spoke with him in great detail regarding the sale of cocaine and crack cocaine, cooking methods for crack cocaine, and different types and forms of crack cocaine. [Doc. 154 p. 116–118, 121, 123, 126, 127–28]. Officer Shaffer also testified that petitioner told him that he had people that sold crack cocaine rocks for him and multiple suppliers, and that there were numerous other people involved [*Id.* at 127–128; Doc. 155 p. 31]. Officer Shaffer additionally testified that the 350 grams of crack discovered in petitioner's apartment was worth approximately $23,000 to $35,000 [Doc. 154 at 151].

Also at trial, Heather Shay, petitioner's former girlfriend, testified that she saw half of a kilo of cocaine on petitioner's kitchen table and that petitioner asked her if she knew anyone who wanted to buy it and if she wanted to sell it for him [Doc. 141 p. 4;

4

Doc. 155 p. 46]. Ms. Shay further testified that she introduced petitioner to a friend and petitioner and the friend did business together, with petitioner selling ounces to her friend for a couple of weeks [Doc. 155 p. 46–47]. Ms. Shay also testified that petitioner told her that if she was going to sell for him, that would be their business, and that she did in fact sell crack for him [*Id.* at 47–50]. Ms. Shay further testified that a man named Barry or Buddy and others also sold drugs for petitioner [*Id.* at 50–51]. Ms. Shay also testified that, at petitioner's request, she delivered drugs to a number of people, sometimes in big quantities, without receiving any portion of the profit, and that the majority of the proceeds she made from the drugs that she sold went to petitioner [*Id.* at 50–51].

On January 14, 2010, the jury unanimously found petitioner guilty of all counts in the superseding indictment [Doc. 126]. After the conviction, a probation officer used the 2009 United States Sentencing Guidelines to find petitioner responsible for 293.3 grams of crack cocaine and 73.1 grams of powder cocaine, for a combined marijuana equivalent of 5,880.08 kilograms, resulting in an offense level of 32 [Presentence Report ("PSR") at ¶¶ 27, 29]. The PSR applied a four-level enhancement due petitioner's leadership role, making the total offense level 36 [PSR ¶¶ 32, 37]. Given his criminal history category of I, the PSR found that petitioner's corresponding advisory Guidelines range was 188 to 235 months' imprisonment [PSR ¶¶ 41, 51].

Counsel for petitioner objected to the PSR's recommendation that the Court apply the four-level leadership role enhancement, arguing that the evidence did not establish identification of five or more participants in petitioner's criminal conspiracy and that this

5

issue should have been presented to the jury under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) [*Id.* at 12–13]. After hearing arguments from both parties, the Court held that *Apprendi* did not apply and declined to apply the leadership role enhancement recommended in the PSR, United States Sentencing Guidelines ("USSG") §3B1.1(a), which requires finding that a defendant had a leadership role in criminal activity involving five or more participants or was otherwise extensive [Doc. 158 at 23, 24, 29]. Instead, based on its recollection of the evidence in the case, the Court applied the two-level leadership role enhancement set forth in USSG § 3B1.1(c), which requires finding that a defendant had a leadership role in criminal activity involving four or less participants and was not otherwise extensive, lowering petitioner's advisory guidelines range to 151 to 188 months' imprisonment [*Id.* at 23–25]. The Court ultimately sentenced petitioner to 160 months' imprisonment [Doc. 151].

During the sentencing hearing on June 23, 2010, petitioner's counsel stated that he "would imagine that [petitioner] will be deported and go back to the Honduras" after completing his sentence [Doc. 158 p. 26]. The Court also referenced deportation and the fact that petitioner was in the country illegally when he committed the offenses [*Id.* at 35]. The Court further noted that petitioner denied illegal substance use and could benefit from training and educational opportunities offered by the Bureau of Prisons ("BOP") [*Id.* at 31, 33]. In his allocution, petitioner stated that he went to trial because the plea agreement he was offered required him to "cooperate and give information to the Government," but that he "had absolutely no information" to offer [*Id.* at 27].

6

On August 5, 2010, petitioner appealed the procedural and substantive reasonableness of his sentence to the Sixth Circuit Court of Appeals [Docs. 152, 160 p. 1]. On December 15, 2011, the Sixth Circuit affirmed the imposition of petitioner's sentence [*Id.* at 3].

On May 11, 2012, petitioner filed the instant motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 [Doc. 168]. Petitioner sets forth two grounds for relief, namely: (1) illegal application of the leadership role enhancement based on petitioner's assertion that the Court relied exclusively on the testimony of Heather Shay, whom petitioner states lacks credibility, in applying the enhancement; and (2) ineffective assistance of counsel related to application of the leadership role enhancement based on petitioner's assertion that the fact that counsel did not cite case law in support of this argument against application of the enhancement demonstrates that counsel did not properly investigate the issue and was not properly prepared [*Id.* at 4–5]. On June 18, 2012, respondent filed a response in opposition to petitioner's § 2255 motion asserting that petitioner's argument against application of the leadership enhancement role was procedurally defaulted and fails on the merits, and that his ineffective assistance of counsel claim likewise fails on the merits [Doc. 173].

On December 4, 2012, the Court granted petitioner leave to file an amended § 2255 motion, which added a claim of ineffective assistance of counsel based on counsel's alleged failure to advise petitioner of all possible consequences of going to trial rather than accepting a guilty plea [Doc. 191; Doc. 192 p. 1]. In support of this claim, petitioner

7

appears to allege that, prior to trial, counsel did not advise him of: (1) the fact that he would be deported if convicted; (2) the existence of a BOP policy that increases petitioner's security level and prevents petitioner from participating in educational programs due to the fact that he was convicted by a jury rather than through entry of a guilty plea, and (3) the existence of "fast-track" programs [*Id.* at 1, 3, 6, 10]. Petitioner claims that the alleged BOP policy has resulted in him losing critical rights, such as educational programs and the drug and alcohol program, and negatively affected his family [*Id.* at 1–2]. Petitioner asserts that if counsel had advised him of all consequences of going to trial, he would have insisted upon entering into a plea agreement with the government [*Id.* at 3]. Petitioner also states that the Court omitted consideration of his deportation status at sentencing and requests that the Court review his eligibility for the "fast-track" program [*Id.* at 4–6].

### III. Analysis

#### A. Leadership Role Enhancement

Petitioner objects to the Court's application of the leadership role enhancement on two grounds.[3] Petitioner first objects to application of this enhancement based on his assertions that Heather Shay's testimony was the only basis for application of the

---

[3] The Government argues that petitioner procedurally defaulted his objection to the two-level leadership role enhancement in his § 2255 motion due to petitioner's failure to raise it on direct appeal. In response, petitioner argues that his counsel was ineffective on appeal, and that this ineffectiveness excuses his failure to raise these issues on appeal. In the interest of judicial efficiency, the Court declines to address this argument. *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (holding that federal courts "are not required to address a procedural-default issue before deciding against the petitioner on the merits" in habeas review).

enhancement and that this testimony lacked credibility. Petitioner also relies on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), to assert that the jury should have determined whether the leadership role enhancement applied to petitioner.[4]

First, petitioner incorrectly states that the Court found that there was not sufficient evidence of five or more participants in the criminal activity and therefore applied the leadership role enhancement because it found the criminal activity to be otherwise extensive. As set forth above, that is not the case.[5] The Court did analyze the evidence as it related to USSG § 3B1.1(a) and observe that while there was not specific proof of five or more participants in petitioner's criminal activity, there was proof of petitioner's extensive involvement in a high level of drugs and direction of Heather Shay and others. Nonetheless, the Court declined to apply USSG § 3B1.1(a) and instead applied the two-level leadership role enhancement set forth in USSG § 3B1.1(c), which requires only that a defendant be an "organizer, leader, manager, or supervisor" in criminal activity that is does not involve five or more participants and is not otherwise extensive.

Next, petitioner asserts that the Court exclusively relied upon Heather Shay's testimony in deciding to apply USSG § 3B1.1(c) to enhance petitioner's sentence and that this was improper because the testimony was not credible. In order for USSG § 3B1.1 to

---

[4] Petitioner also asserts that the PSR is inaccurate due to the fact that it relies on the police report, the government investigation, and hearsay testimony. This passing assertion is irrelevant, as the Court made the decision to apply USSG § 3B1.1(c) based on the evidence at trial.

[5] Petitioner also incorrectly states in his § 2255 motion that the leadership enhancement increased his sentence by over one hundred months. Both Count One and Count Six of the indictment required a mandatory minimum sentence of 120 months, however [Doc. 158 p. 4–6], and the Court imposed a sentence of 160 months, which was at the low end of the advisory guidelines range of 151–188 months' imprisonment [Doc. 158 p. 25, 34].

9

apply, a preponderance of the evidence must establish that the defendant had control over at least one person. *United States v. Melesio*, 532 F. App'x 596, 600 (6th Cir. 2013).

While Heather Shay's testimony at trial undoubtedly had credibility issues, respondent offered other extensive and credible evidence that supported the application of USSG § 3B1.1(c) to petitioner's sentence. Specifically, as set forth above, Officer Shaffer testified at length regarding his interactions with petitioner and Heather Shay and his conclusions therefrom. This testimony alone provided substantial evidence that petitioner acted as an "organizer, leader, manager, or supervisor" in in the criminal activity. Moreover, this testimony also corroborated Heather Shay's testimony with regard to petitioner's leadership of the criminal activity and his direction of her and others. The record establishes that the Court relied upon its recollection of the evidence as a whole, not just Heather Shay's testimony, in finding that petitioner "clearly" fit USSG § 3B1.1(c)'s definition of "organizer, leader, manager, or supervisor" [Doc. 158 p. 23–25]. As such, application of the leadership role enhancement was proper.[6]

Petitioner's also asserts that *Apprendi* required the Court to submit the leadership role enhancement to the jury. This assertion is without merit. In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the

---

[6] Petitioner also asserts that the application of USSG § 3B1.1(c) was motivated by vindictiveness and therefore wrongfully prevented him from being eligible for a safety-valve reduction of his sentence. As set forth herein, however, the leadership role was applied because the evidence clearly supported its application and the application thereof accordingly did not wrongfully deny petitioner a safety-valve reduction. *See* 18 U.S.C. § 3553(f)(4), USSG §5C1.2(a)(4), and *United States v. Hays*, 468 F.3d 422, 427 (6th Cir. 2006).

jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. As petitioner acknowledged at the sentencing hearing, however, Counts One, Five, Six, and Seven of the superseding indictment provided a statutory maximum sentence of life imprisonment [Doc. 158 p. 4–6]. Accordingly, application of USSG § 3B1.1(c) did not increase this authorized statutory maximum sentence, but rather guided the Court as to the applicable advisory range for petitioner's sentence, and *Apprendi* is inapplicable. *United States v. Cooper*, 739 F.3d 873, 884 (6th Cir. 2014) (holding that neither *Apprendi* nor *Alleyne*, 133 S. Ct. 2151 (2013), require submission of facts that trigger an increased guidelines range, but not a statutory minimum or maximum sentence, to the jury).

### B. Ineffective Assistance of Counsel

Petitioner also alleges that he received ineffective assistance of counsel with regard to (1) the application of the leadership role enhancement; and (2) counsel's alleged failure to inform him of all possible consequences of going to trial. The Sixth Amendment provides, in pertinent part: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.

> Second, the defendant must show that the deficient
> performance prejudiced the defense. This requires showing
> that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.
> Unless a defendant makes both showings, it cannot be said
> that the conviction . . . resulted from a breakdown in the
> adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. As with any other claim under § 2255, the burden of proving

ineffective assistance of counsel is on the petitioner. *Virgin Islands v. Nicholas*, 759 F.2d

1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*, the appropriate measure of attorney

performance is "reasonableness under prevailing professional norms." *Strickland*, 466

U.S. at 688. A party asserting an ineffective assistance of counsel claim must "identify

the acts or omissions of counsel that are alleged not to have been the result of reasonable

professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of

counsel's performance must be made "from counsel's perspective at the time of the

alleged error and in light of all the circumstances, and the standard of review is highly

deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires a claimant to show counsel's

deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if

professionally unreasonable, does not warrant setting aside the judgment of a criminal

proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. In

12

the context of ineffective advice resulting in rejection of a guilty plea, the Supreme Court

has held as follows:

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012). The Supreme Court emphasized a

claimant must establish both prongs in order to meet his burden, and if either

prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Strickland*, 466 U.S. at 697.

### 1.    Leadership Role Enhancement

Petitioner acknowledges that counsel made a good argument against application of

the leadership role enhancement, but asserts that counsel's failure to cite any cases in

support of his argument shows that counsel did not properly investigate or prepare the

13

argument. Petitioner has not demonstrated that counsel's argument on this issue was professionally unreasonable, however, or that any prejudice resulted from this argument.

First, the case law petitioner cites in support of this argument, which he presumably asserts counsel should have presented to the Court, is irrelevant to this case. *See, e.g., United States v. Johnson*, 378 F.3d 230, 241 (2d Cir. 2004) (holding that the court has no obligation to accept a PSR's recommendation); *United States v. Stapleton*, 268 F.3d 597, 598 (8th Cir. 2001) (holding that where a defendant contests the contents of a PSR, the government has a duty to establish the contested contents by a preponderance of the evidence). As the record demonstrates that the Court did not follow the PSR's recommendation as to application of USSG § 3B1.1(a) but rather relied on the evidence presented at trial to find that petitioner instead fit USSG § 3B1.1(c)'s definition of "organizer, leader, manager, or supervisor" [Doc. 158 p. 23–25], these cases and the other substantially similar cases petitioner cites to the Court would not have been helpful on this issue.

Moreover, as petitioner acknowledges, counsel's argument against application of the four-level leadership role enhancement was effective and more than adequate. As such, petitioner cannot establish ineffective assistance of counsel on this issue.

## 2.    Consequences of Trial

Petitioner next asserts that counsel was ineffective for not informing him as to all possible consequences of being found guilty at trial, rather than entering a guilty plea.[7] Petitioner's assertions on this issue are confusing, but taking the amended § 2255 petition as a whole and construing the allegations liberally, petitioner appears to allege that counsel was ineffective for not informing petitioner, prior to trial, that: (1) that he would be deported if convicted; (2) the BOP would not allow petitioner to participate in some educational programs and would increase his security status due to the fact that petitioner is an immigrant and was convicted by a jury, rather than through entry of a guilty plea; and (3) some district courts implemented "fast-track" programs under which the government would move for a downward departure of sentence of up to four levels in exchange for a guilty plea as to certain immigrant offenders.  Petitioner states that if he had known of all implications of going to trial he would have instead pleaded guilty, and further asserts that his family has been injured by his inability to participate in BOP policies that would have bettered him as a person.

Petitioner's argument is, essentially, that he rejected a plea agreement due to ineffective advice of counsel.  Accordingly, as set forth above, petitioner must show a reasonable probability that the parties would have presented a plea offer to the court, the

---

[7] Petitioner relies upon *Padilla v. Kentucky*, 559 U.S. 356 (2010), for this argument.  In *Padilla*, the Supreme Court held that a criminal defense attorney must advise a noncitizen client as to whether a guilty plea may result in deportation.  *Id.* at 374.  Petitioner also repeatedly refers to a guilty plea and case law involving guilty pleas, and at one point makes an argument regarding waiver.  As set forth above, however, petitioner did not enter a guilty plea, or sign any waiver, but rather was found guilty by a jury.  Thus, *Padilla* is not applicable to petitioner.

15

court would have accepted the plea agreement, and that the conviction or sentence under the plea agreement would have been less severe than what was imposed. *Lafler v. Cooper*, 132 S. Ct. 1376, 1384–85 (2012).

As previously set forth herein, at his sentencing hearing, petitioner stated to the Court that he went to trial because the plea agreement he was asked to sign required him to "cooperate and give information to the Government" but that he "had absolutely no information" to offer [Doc. 158 p. 27]. As petitioner has presented no evidence to support a finding that he could have secured a plea agreement under which he was not require to "cooperate and give information to the Government" and petitioner has affirmatively denied that he could do those things, petitioner has not established a reasonable probability that the parties would have reached a plea agreement. Even if the Court assumes that petitioner could have somehow secured such a plea agreement, however, petitioner's claims of ineffective assistance are still without merit.

First, petitioner cannot establish that he would not be subject to deportation if he had been convicted through a guilty plea rather than a jury verdict. Section 1227(a)(2)(B)(i) of Title 8 of the United States Code provides that any alien convicted of a violation of a law or regulation of the United States relating to a controlled substance is deportable, and it does not distinguish convictions based on a guilty plea as opposed to jury verdict. Under these circumstances, accepting the assertion that counsel did not

advise petitioner prior to trial that he could be deported if convicted as true,[8] petitioner cannot establish any prejudice and is therefore not entitled to relief on any such claim.

Additionally, petitioner argues that his counsel was ineffective for not alerting him that the BOP has an alleged policy under which petitioner has been "assigned a discriminatory status," denied access to certain educational programs,[9] and assigned a higher security status due to the fact that he did not enter a guilty plea, but rather was found guilty by a jury [Doc. 192 p. 1–3]  Even if the Court assumes that such a policy exists, the Court is presently unaware of it, and was unaware of such a policy at the time of petitioner's sentencing, as the Court advised petitioner that he would benefit from educational programs offered by the BOP.  Thus, it was professionally reasonable for counsel to likewise be unaware of any such policy.

---

[8] Petitioner never specifically asserts that counsel did not inform him prior to trial that he could be deported if convicted, nor does he state that he was unaware of this consequence. Rather, petitioner states that he was not advised at sentencing that a guilty verdict would trigger automatic deportation, repeatedly asserts that counsel did not advise him of all possible changes to his immigration status that would result from going to trial, and states that he will be deported. The Court has liberally construed these assertions to set forth the argument that counsel did not inform petitioner of this consequence prior to trial.  As previously noted herein, however, counsel specifically referred to petitioner being deported upon release at the sentencing hearing. Accordingly, it is clear that counsel was aware of this possible consequence of petitioner's conviction and, from the entire record, it seems unlikely that counsel did not discuss it with petitioner prior to trial.

[9] The only program petitioner specifically asserts that he has been unable to enroll in is a drug and alcohol program.  Petitioner asserts that this program is "much-needed" but "is only available to non-immigration offenders," and that the lack of availability of such programs has "immensely affected" his family and loved ones [Doc. 192 p. 1–2]. The PSR, however, reflects that petitioner denied ever using alcohol and illegal substances, and Heather Shay testified at trial that petitioner did not do any type of drugs and only drank beer at her birthday.  Moreover, petitioner is still incarcerated, so his assertion that the lack of availability of these programs affects his loved ones, even if presumed to be relevant to a determination of whether petitioner is entitled to relief under §2255, is speculative.

17

Petitioner also argues that counsel was ineffective for not informing him of the existence of "fast-track" programs prior to trial. The Sixth Circuit has stated that "fast-tracking" was originally implemented by United States Attorney's offices with heavy illegal immigration dockets to allow immigrants to quickly plead guilty and waive various rights, including the right to appeal, make pre-trial motions, and request sentencing variances, in exchange for a government motion for a downward departure of up to four levels in sentencing. *United States v. Sanchez-Ross*, 527 F. App'x 451, 453 (6th Cir. 2013). Petitioner, however, was charged and sentenced prior to the Eastern District of Tennessee implementing such a program. *Id.* at 453 n.1. Accordingly, petitioner cannot show a reasonable probability that, had counsel informed him of the existence of "fast-track" programs, the parties would have entered such a plea agreement.

Moreover, to the extent that petitioner asserts that counsel should have argued for a non-guidelines sentence based on sentencing disparities due to the existence of fast-track programs in other districts, the Sixth Circuit has specifically noted that its precedent at the time that petitioner was sentenced stood for the proposition that district courts did not "have authority to reject the policy underlying Guidelines provision, including the fast-track disparity" in applying the 18 U.S.C. § 3553(a) factors. *United States v. Camacho-Arellano*, 614 F.3d 244, 248 (6th Cir. 2010). The Court is aware that the Sixth Circuit reversed that precedent soon after petitioner's sentencing. *Id.* at 250 (stating that "we repudiate any prior hint that district judges could not grant variances based on the fast-track disparity"). As set forth above, however, the Court must view counsel's

18

conduct that is alleged to be deficient deferentially and "from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). Accordingly, the Court finds that it was professionally reasonable for counsel not to ask the Court for a non-guidelines sentence for petitioner based on sentencing disparities relating to "fast-track" defendants at the sentencing hearing, as this argument would have been directly contrary to Sixth Circuit precedent, and petitioner is not entitled to relief on any such claim.

### C. Fast-Track Consideration

In his amended petition, petitioner also requests that the Court consider his eligibility for the "fast-track" program in light of a 2012 letter from a U.S. Attorney General James M. Cole, which petitioner states authorized all districts to grant "fast-track" programs to account for disparities in sentencing. Petitioner asserts that this alleged letter is a "ruling" which should be applied retroactively to make him eligible for a downward departure under USSG § 5K3.1.

As set forth above, it does appear that the United States Attorney's Office for the Eastern District of Tennessee has now adopted a "fast-track" policy. *Sanchez-Ross*, 527 F. App'x 453 n.1. The plain language of USSG § 5K3.1, however, authorizes courts to depart downward under that provision only upon motion of the government. Respondent United States has not responded to petitioner's request that it move for application of the "fast-track" program to petitioner or otherwise requested that the Court retroactively apply any "fast-track" program to petitioner.

19

Moreover, as set forth above, petitioner did not plead guilty in this case, but rather apparently declined to accept a plea agreement and proceeded to trial after being appointed several attorneys and filing a number of motions both through counsel and *pro se* despite representation by counsel. Petitioner has also appealed his sentence directly to the Sixth Circuit, as well as collaterally.[10] As such, petitioner is highly distinguishable from "fast-track" defendants who quickly plead guilty and waive their right to file pre-trial motions and appeals. Under these circumstances, the Court denies petitioner's request that the Court apply USSG §5K3.1 to petitioner's sentence.

## IV.    CONCLUSION

Petitioner has failed to demonstrate he is entitled to relief under § 2255. Petitioner's motion to vacate, set aside or correct sentence [Doc. 168] will be **DENIED**, and petitioner's motion for status [Doc. 202] and a motion to expedite proceedings [Doc. 210] will be **DENIED as moot**. This action will be **DISMISSED**. The Court will **CERTIFY** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, this Court will **DENY** petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure. Petitioner having failed to make a substantial showing of the denial of a constitutional right, a

---

[10] The Court references petitioner's pre-trial motions, trial, and appeals only to distinguish petitioner from defendants who quickly plead guilty to take advantage of "fast-track" programs.

20

certificate of appealability **SHALL NOT ISSUE**. 28 U.S.C. § 2253; Rule 22(b) of the

Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER SHALL ENTER.**

**E N T E R :**

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE